ROLA *v.* ESTATE OF HERNÁNDEZ.

APPEAL from the District Court of Aguadilla.

No. 414.—Decided December 10, 1909.

INHERITANCE.—An inheritance is the universal succession, including all of the properties, rights and obligations of a person not extinguished by his death.

ID.—THE RIGHTS AND DUTIES OF ASSIGNEE.—The assignee of an inheritance purely and simply accepted, when the assignment is made without enumerating the things composing the same, acquires together all the rights and obligations and he may exercise the former and must comply with the latter.

ID.—ASSIGNEE—THE LIMIT OF HIS LIABILITY.—The assignee is responsible for the obligations of an inheritance to the extent of the value of the property inherited.

ID.—ASSIGNORS—LIMIT OF THEIR LIABILITY.—The legal status of an heir who sells an inheritance in respect to third parties who are creditors of his predecessor, is that he does not lose his character as an heir, and, if necessary, third parties who are creditors may bring their actions against him.

The facts are stated in the opinion.

*Mr. Fernando Vázquez* for appellant.

The respondent did not appear.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The plaintiff and appellant, Dolores Rola, the widow of Parri, obtained from the District Court of Mayagüez, a judgment in her favor on December 7, 1900, the adjudging portion of which reads as follows:

"*We adjudge:* That sustaining the complaint as we do with reference to the two notes for 900 provincial *pesos* each, we must adjudge, and hereby do adjudge, Juan María, Juan Nepomuceno and Manuel María Domenech, as the heirs of Carmen Hernández de Sus, to pay to Dolores Rola de Parri the sum of 1,800 provincial *pesos* or the equivalent thereof in American money, the value of the two said obligations and legal interest from the date of the filing of the complaint, and we relieve them therefrom with respect to the document for 3,500 *pesos,* all without any special taxation of costs."

On September 10, 1903, execution was levied on two houses belonging to the defendant estate, and the sale price, amounting to $770, was applied to the payment of part of the judgment.

In June, 1908, the plaintiff filed a motion in the court accompanied by a memorandum of fees and a supplementary memorandum of additional fees, praying that an order be made for the secretary of the court to tax the costs, and that a hearing be given to Xavier Mariani as the assignee of the heirs of Carmen Hernández de Sus. The court so ordered, the secretary taxed the costs, and Xavier Mariani contested the taxation and after a hearing which was attended by the plaintiff and the assignee through their attorneys, the court approved the taxation after having stricken out certain items and ordered that said costs be recovered by the method established by law.

On December 29, 1908, the plaintiff filed a motion in the court accompanied by a liquidation of the amount remaining unpaid to satisfy in full the judgment of December 7, 1900, praying for an order directing the issue of a writ to the marshal to attach and sell sufficient property belonging to the

assignee, Mariani, to cover the amount of such liquidation, amounting to 813.26 *pesos* and the costs.

The motion was argued in open court by counsel for both sides and was dismissed by the court by order of May 7, 1909, from which order this appeal was taken.

The transcript of the record contains a copy of the deed of purchase and sale and assignment of rights executed in Ponce on September 26, 1900, before Rafael León, a notary public, by which R. Ulpiano Colón, as the general attorney in fact of Juan María Domenech y Anazagasti, sold to Manuel V. Domenech y Ferrer a house which belonged to his principal under a legacy left him by Carmen Hernández de Sus, and the said R. Ulpiano Colón, as the attorney in fact of the said Juan María and of Juan Nepomuceno and Manuel María Domenech y Anazagasti, assigned to Xavier Mariani the rights and actions which their principals had in the inheritance of the said Carmen Hernández de Sus in the form which appears in the third and fourth clauses of said deed which read as follows:

"Assignment of rights and actions.

"Third: The said R. Ulpiano Colón y Ferrer, as the attorney in fact of said Juan María, Juan Nepomuceno and Manuel María Domenech y Anazagasti, assigns, conveys, and transfers perpetually to Xavier Mariani y Palmieri and his assigns, all the rights and actions which their principals may have or become entitled to as heirs to the property of all kinds left at the time of the death of Carmen Hernández de Sus, assigning to him also all rights, real, personal, of use, deed, direct and any others to which they may be entitled, with absolute subrogation in form, in order that as such assignee and with the concurrence of the other heirs, he may proceed to effect the proper partition of the property and cause to be adjudicated to himself that which might be due their said principals.

"Fourth. This assignment is made for the stipulated price of $2,500, which Colón likewise declares and confesses to have received before this act from the hands of the assignee, for which he issues a receipt and acquittance in due form."

Having established the facts it devolves upon us to consider the questions involved in this case, which are, in our judgment, the following:

(*a*) Should the assignee, Mariani, pay all the charges and debts of the inheritance which he purchases?

(*b*) In an affirmative case, how far does his liability extend? That is to say, should he employ, in the payment only, the property of the inheritance which he may have received, or in the event that such property should not be sufficient, should he pay them from his own private fortune?

(*c*) Does the liability of the assigning heirs to the creditors cease by virtue of the assignment?

The law specially applicable to this case is contained in articles 1531 to 1534 of the former Civil Code, which correspond exactly to sections 1434 to 1437 of the Revised Civil Code.

Manresa says in his "Comentarios al Código Civil," volume 10, page 365: "It is very important to note the character of the sale of the inheritance referred to in article 1531. The essential part of this contract is that the inheritance is considered as a universal matter, as a mass of rights and obligations, because as the quality of an heir imposes specific duties at the same time that it contains the rights of the successor, everything is understood to be conveyed by the act of the assignment to the assignee."

And Scoevola, in his "Comentarios al Código Civil," volume 23, page 954, says: "The reason for article 1531 has been explained by the jurists, Baudry and Saignat, who say that an heir may sell the estate to which he is called in three different ways: Either the personal and real property of which it consists, specifying it in detail, and then an ordinary sale is involved which does not partake of any special character; or his claims to the estate * * *; or the entire estate to which he has been called, when it is necessary for him to guarantee his capacity as an heir, with the understanding that it is not this capacity which he conveys to the vendee,

because it cannot depend on him to give to another his place in the family and his degree of relationship to the deceased from whom the inheritance was derived, but the mass of property and debts left by him, the whole of his active and passive patrimony, the *universe ius defuncti* \* \* \*. Pothier graphically says: ''When I sell my rights of succession to a person, I sell the entire benefit which I have obtained from said succession and all that which I might derive therefrom; in a word, all the assets, with the charge on the purchaser of paying the debts and encumbrances on the estate and to indemnify himself. (Vente No. 259.)''

An inheritance, as it has been defined by the legislator, is a universal mass which comprises all the property, rights and obligations of a person which are not extinguished by his death. And the assignees of an inheritance purely and simply accepted, acquires, when the sale is made without the enumeration of the things of which it consists, a mass of rights and obligations, and if it be just for him to exercise the former, it is also just that he comply with the latter.

The purchase of the rights and actions of an inheritance is a voluntary act, and the purchaser in estimating the benefits must take into consideration the liabilities. To pay the debt and charges against the inheritance is the first thing, and it is only the remainder that the heirs may freely apply to their own benefit.

Therefore, one who acquires the rights and actions to an inheritance, without enumeration of the things of which said inheritance is composed—that is to say, as a mass—is obliged to pay the charges and debts against such inheritance.

Now then, how far does his liability extend?

Scevola, in volume 23, page 960, of his ''Comentarios'' expresses himself as follows: ''The guide for the interpretation of article 1534 is found in article 1533. The purchaser enters upon the possession of the estate in the form in which it was assigned to him, with the profits, in a proper case, as

determined in the latter article and with those which might
be acquired later, through any cause, from the hereditary
property which he had acquired generically. It is conse-
quently natural and just that he pay the same thing which
the heir would have been required to pay had he not conveyed
his rights, such as the legacies, the credits in favor of the
former and against the inheritance, the proportional part of
the expenses of division and partition, the charges against
the hereditary property, and, in general, everything which,
in a word, is comprised in the term of *charges of the estate
and not of the person of the assigning heir.*"

The assignee is liable for the charges against the estate
with the estate itself. His liability extends that far, and the
justice of this conclusion appears even more clearly after
considering the last of the questions involved—that is to say,
does the liability of the assigning heirs cease by virtue of the
assignment?

Scevola holds that the sale of rights of succession cannot
prejudice third persons who are creditors of the estate, who
shall always have a right of action against the vendor. (23
Scevola, Comentarios al Código Civil, 961.) And Manresa
also says that the juridical condition of the vendor of an
estate with respect to third persons creditors of the prede-
cessor in interest of the estate is that he does not lose the
character of an heir and it is unquestionable that third persons
may direct their actions against him, inasmuch as he is such
heir so far as they are concerned. (10 Manresa, Comen-
tarios al Código Civil, 369.)

Applying all that has been stated to the specific case under
consideration, we will say that Mariani, having acquired the
rights and actions to the inheritance of Carmen Hernández
Sus, without an expression of the things of which such estate
consisted—that is to say, as a whole or a mass—he acquired
it in a universal manner and may exercise the rights and must
comply with the obligations derived from such acquisition;
that the liability of the assignee, Mariani, extends only to the

property composing the estate which he may have acquired, and that the liability of the Domenech y Anazagasti heirs to the creditors of the Estate of Carmen Hernández did not cease by virtue of the assignment which they made of their rights of succession.

Therefore, we are of the opinion that the motion of the plaintiff for a writ of attachment against the property of the assignee for the satisfaction of the judgment rendered against the assigning heirs, should not have been overruled. The writ should have issued, and the marshal should have been directed therein to attach and sell property belonging to the assignee or any interest which the assignee might have in any property, provided such property or interest were derived directly or indirectly from the assignment of the rights and actions embodied in public deed No. 728, executed in Ponce on September 26, 1900, before Notary Rafael León. (See sec. 246 of the Code of Civil Procedure.)

Consequently the appeal should be allowed and the order of May 7, 1909, appealed from reversed.

*Reversed.*

Chief Justice Hernández and Justices Figueras, MacLeary and Wolf concurred.